# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EILEEN B.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 4964 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(I), 423, over three years ago in April of 2019. (Administrative Record (R.) 193-94). She claimed that she had been disabled since March 11, 2019, due to depression, anxiety, PTSD, low back pain, bulging disc, arthritis, right leg radiculopathy, diabetes, and mitral valve prolapse. (R. 214). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the final ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on September 20, 2021. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on January 12, 2022. [Dkt. ## 10, 11]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

## I.

### A.

Plaintiff was born on December 17, 1960, making her 58 years old when she claimed she became unable to work, and 60 years old at the time of the ALJ's decision. (R. 29, 193). She is a high school graduate. She worked steadily from 2005 through 2019 (R. 211-12), mostly as a receptionist/clerk at a healthcare facility. (R. 216, 239-42). Prior to that she worked in quality control at a jewelry store. Both jobs involved lifting up to 20 pounds and carrying up to 10. (R. 241-42).

On March 7, 2018, plaintiff saw her treating doctor, Dr. Spishakoff. Mental status evaluation was normal: behavior, mood, affect, thought process, thought content, cognition, insight, and judgment were all within normal limits. (R. 400). On June 24, 2018, review of systems was negative for any complaints, including depression, concentration difficulties, musculoskeletal, or neurological issues. Mental status exam was within normal limits in all facts. (R. 405). Plaintiff reported doing very well with her medications. (R. 406). Findings were essentially the same on August 6, 2018 (R. 408), September 5, 2018 (R. 412), and in November 2018. (R. 415-17).

On May 7, 2019, Dr. Spishakoff reported plaintiff's behavior, mood, affect, and thought process were all normal. Insight and judgment were fair. The doctor recommended plaintiff see a therapist. (R. 610). Diagnoses were failed back syndrome, hypothyroidism, alcohol dependence in remission, opioid dependence in early remission, hyperlipidemia, benign hypertension, diabetes, and major depressive disorder, moderate. (R. 610). On a visit with Dr. Spishakoff, plaintiff reported having felt absent-minded and numb. She was feeling some anxiety and was isolating. She was not going to counseling. (R. 711). Mental status exam was within normal limits in all facets: mood,

2

affect, thought process and content, insight and judgment. (R. 712). On July 9, 2019, mental status exam was, again, normal in all areas. (R. 730). Results were the same on August 6, 2019 (R. 747), September 3, 2019 (R. 766-67), and September 24, 2019 (R. 807), and October 29, 2019. (R. 826-27).

On September 26, 2019, plaintiff had a consultative exam with Dr. Dinesh Jain, in connection with her application for benefits. (R. 556). Plaintiff reported that she had been admitted to a psychiatric unit three times as a result of suicidal ideation, with her last admission five years earlier. She was under the care of a psychiatrist on a regular basis. (R. 556). She said she felt depressed, unmotivated, and had trouble sleeping. (R. 556). She had trouble getting along with people and tended to isolate herself. (R. 556). Plaintiff also reported history of low back pain. (R. 557). Dr. Jain noted an MRI which showed disc disease and plaintiff was seeing a pain management physician. (R. 557). Dr. Jain also noted an x-ray of plaintiff's lumbar spine showed degenerative disc disease without evidence of bone damage. (R. 555, 559).

Examination showed short and long term memory to be normal. Affect was normal. (R. 557). Range of motion was normal in all joints of the upper and lower extremities. Neurological exam was normal; motor functioning was normal. (R. 557). Range of motion of the lumbar spine was limited to 70 degrees flexion, 10 degrees extension, and 10 degrees lateral flexion. (R. 558). Straight leg raising was positive on the right side with right hip flexion up to 20 degrees producing neuralgia-type symptoms to the posterior part of the right high and right gluteal region. (R. 558). Gait was normal. (R. 558). Plaintiff had moderate difficulty with squatting. (R. 558). Dr. Jain felt that plaintiff could sit 25-30 minutes at a time, stand 20 minutes at a time, walk 2 blocks, and lift/carry 8 pounds. (R. 558).

On October 24, 2019, plaintiff sought treatment for a "near-syncope" episode. She denied back or neck pain, and denied depression. (R. 560). Physical exam was normal. Musculoskeletal range of motion was normal. Mood and affect were normal. (R. 561). EKG revealed premature ventricular contractions. CT scan of the head was normal. (R. 562). Plaintiff was treated with IV fluids including magnesium. (R. 564-65).

On October 29, 2019, Dr. Spishakoff, completed a mental impairment questionnaire from plaintiff's attorney. (R. 588). Dr. Spishakoff had been seeing plaintiff monthly since April 2016. (R. 588). His diagnosis was major depressive disorder. GAF was 60, indicating moderate symptoms. He had prescribed Amlodipine, Adderall, Clonazepam, Wellbutrin. Prognosis was good. (R. 588). The doctor reported plaintiff had difficulty concentrating, apprehensive expectation, emotional withdrawal, and memory impairment. (R. 590). Plaintiff had moderate limitations in activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace. (R. 591). Dr. Spishakoff said plaintiff had an inability to function outside a highly supportive living arrangement. Plaintiff would also likely be absent from work about 3 days per month. (R. 592).

At an October 30, 2019 follow-up appointment with her physician, Dr. Rife, plaintiff denied depression. (R. 844). She appeared anxious, but she was alert, oriented, and thought process was logical. Physical exam, including range of motion, was normal, with the exception of diminished breath sounds. (R.845).

On November 4, 2019, plaintiff saw Dr. Zaki Anwar for her back pain. He had administered medial branch blocks on May 15, 2019, and June 19, 2019. (R. 850-53). Plaintiff reported she had significant relief with those. (R. 853). Dr. Anwar noted radiculopathy and spondylosis of the

4

lumbar region, along with right hip pain. (R. 854).

On November 25, 2019, Dr. Anwar completed a physical medical source statement from plaintiff's attorney. (R.857). Dr. Anwar reported a diagnosis of lumbar radiculopathy and a fair prognosis. (R. 857). The doctor felt that plaintiff could sit for 15 minutes at one time; and sit/stand/walk for less than 2 hours in a workday. She would require shifting positions at will; would need to walk around every 5 minutes for 3 minutes; and would need to elevate legs with prolonged sitting, She could rarely lift/carry less than 10 pounds; never lift/carry 10 pounds or more; never twist, stoop, crouch, squat, climb stairs, or climb ladders. (R. 859-60). She could only use her hands for grasping, turning, twisting, and fine manipulation 50 percent of the day; her arms for reaching 10 percent of the day. (R. 861). She would likely be off task 20 percent of the day, and would likely be absent more than 4 days per month. (R. 861).

On December 17, 2019, plaintiff sought treatment for chest pain and dyspnea. (R. 936). Physical exam was essentially normal aside from frequent PVCs, right flank pain. Range of motion and strength were normal throughout. Gait was normal. (R. 939). Sensation and motor function were normal. Mood and affect were normal. (R. 940). Plaintiff underwent a catheter ablation. (R. 942). Chest x-ray showed no acute cardiopulmonry process. (R. 997). At follow-up a month later, symptoms had resolved. (R. 1205). Plaintiff denied depression or lack of interest. (R. 1206). Physical and psychiatric exams were normal. (R. 1207).

On April 20, 2020, chest x-ray showed upper-limit-sized heart, no pulmonary consolidation or edema. (R. 1395). On May 19, 2020, plaintiff sought treatment for chest pain and shortness of breath. She also complained of joint pain, decreased range of motion, nausea, and heartburn. (R. 1247). She was anxious and depressed. (R. 1248). Examination was essentially normal. Lungs

5

were clear to ausculation, and musculoskeletal range of motion, strength, and gait were normal. Sensory and motor function were normal.  Mood and affect were appropriate.  (R. 1251, 1281). Echocardiogram revealed normal LV function, ejection fraction 55%, normal heart size, and moderate grade II diastolic dysfunction.  (R. 1456).

Plaintiff saw Dr. Spishakoff on May 28, 2020.  She reported feeling  unable to focus and angering easily. (R. 1572).  Blood pressure was elevated.  (R. 1578).  Mood, affect, thought process, thought content, and cognition were all normal.  Insight and judgment were fair.  (R. 1579).  Results were the same a month later (R. 1594), and again on July 6, 2020 (R. 1609), August 6, 2020 (R. 1629-30), September 3, 2020 (R. 1645), October 1, 2020 (R. 1664), November 5, 2020 (R. 1681), and December 12, 2020.  (R. 1736).

Plaintiff had a cardiac catheterization on October 6, 2020.  (R. 1427).  CT scan at that time revealed evidence of mild, non-obstructive pericardial disease.  (R. 1430).  On November 18, 2020, plaintiff had a follow-up with Dr. Joseph Stella.  She felt good.  She had chest pain thought to be musculoskeletal rather than cardiac.  (R. 1421).  She was referred to her primary physician.  (R. 1424).  A chest x-ray on December 5, 2020, showed no evidence of acute cardiopulmonary abnormality.  (R. 1451).  Depression screening at that time revealed mild symptoms.  (R. 1481).  As of December 17, 2020, plaintiff was still experiencing chest wall pain.  (R.1478).  Her musculoskeletal range of motion was normal.  Cognitive function was intact, thought process was logical, mood and affect were full, judgment and insight were good.  (R. 1479).

Dr. Spishakoff filled out another mental impairment questionnaire on February 11, 2021, (R. 1746). Dr. Spishakoff noted diagnoses of major depressive recurrent, ADHD, opiate use disorder in remission, diabetes, and hypertension. GAF was 60. Response to medications had been good.

Prognosis was fair. (R. 1746). Plaintiff's signs and symptoms included: anhedonia or pervasive loss of interest in almost all activities; decreased energy; feelings of guilt or worthlessness; generalized persistent anxiety; persistent disturbances of mood or affect; emotional withdrawal or isolation; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring the average of at least once a week. (R. 1747). Dr. Spishakoff felt plaintiff had a marked restriction of activities of daily living; an extreme limitation in maintaining social functioning; and an extreme limitation in maintaining concentration, persistence or pace. (R. 1748). Dr. Spishakoff noted three episodes of decompensation within a 12 month period, each of at least two weeks duration. (R. 1748). The doctor felt the plaintiff would likely be absent from work more than 4 days per month. (R. 1749).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: : degenerative disc disease, depression, anxiety, attention deficit hyperactivity disorder, and post traumatic stress disorder. (R. 16). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the requirements for the Listings 1.04 (disorders of the spine) and 12.04, 12.06, and 12.15 (mental impairments). (R. 18-21). As for plaintiff's limitations due to her mental impairments, the ALJ found the plaintiff had mild a limitation in understanding, remembering or applying information, and moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 19-20).

7

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b). She can frequently climb ramps/stairs and occasionally climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She would have moderately impaired ability to complete complex tasks but is able to do simple and detailed tasks. She can interact occasionally but briefly with the public, coworkers, and supervisors. She could tolerate occasional workplace changes but not frequent due to stress/anxiety. For the same reason, she may be off task up to 10% of the day but not all at the same time.

(R. 25-26). The ALJ then reviewed plaintiff's allegations and activities. She went on to summarize the medical evidence. She noted that plaintiff had gained relief from back pain with injection treatments, and that physical exam results were mostly normal. The ALJ went over plaintiff's psychiatric treatment and exam results. She then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 25). The ALJ added that plaintiff's testimony about activities was inconsistent, and that she declined psychiatric counseling. (R. 25-26).

As for medical opinions, the ALJ found the opinion from the state agency medical consultant that plaintiff could do medium work unpersuasive because it did not account for plaintiff's back impairment. (R. 26). She found the reconsideration state agency medical consultant's opinion that plaintiff could do light work persuasive because it was consistent with lumbosacral findings. (R. 26). The ALJ also found persuasive the state agency psychological consultant's opinion that plaintiff could carry out tasks with adequate persistence and pace and would be moderately impaired for complex tasks but adequate for completion of simple and detailed tasks, complete a normal workday, interact briefly/superficially with the public/coworkers/supervisors, and adapt to occasional

workplace changes. (R. 27). The ALJ found the opinion from plaintiff's treating doctor that she was unable to perform complex tasks persuasive, but found the balance of the doctor's opinion – that plaintiff could not function outside of her home – unpersuasive as it was inconsistent with plaintiff's activities of daily living. (R. 27). The ALJ also found unpersuasive the opinion from consulting examiner Dr. Jain that plaintiff could sit for only 25-30 minutes, stand only 20 minutes, and walk only 2 blocks due to back pain. The ALJ said it was inconsistent with the medical record which included evidence of only degenerative changes and no disc herniation, lumbar spinal stenosis, or nerve root compression. The ALJ added that the doctor only examined plaintiff on one occasion and gave no objective or clinical support for his opinion. (R. 28).

The ALJ then found that plaintiff was able to perform her past work as an inspector because it did not require the performance of work-related activities precluded by the plaintiff's residual functional capacity. In doing so, the ALJ relied on the testimony of the vocational expert that plaintiff's inspector job (DOT Code 700.687-034) was sedentary, and semi-skilled. (R. 29). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 29).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the

evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek*, 139 S. Ct. at 1154; *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). If reasonable minds could differ, the court must defer to the ALJ's weighing of the evidence. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). But, in the Seventh Circuit, at least thus far, the ALJ also has an obligation to build what the court has called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." As *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) put it: "we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." [2] *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not

---

[2] The term "accurate and logical bridge" was first used by Judge Spottswood Robinson in a non-Social Security context in *Thompson v. Clifford*, 408 F.2d 154 (D.C.Cir. 1968), which said "'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in
(continued...)

address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record..."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties, ... No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard: one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare. But no matter what one's view of the "logical bridge" requirement, no one suggests that the "accurate and logical bridge" must be the equivalent of the Point Neuf. The subjectivity of the requirement makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged, or when upheld at the district court level and challenged again before the Seventh Circuit.

But, at the same time, the Seventh Circuit has also called the "logical bridge" requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). Indeed, prior to *Sarchet*, the Seventh Circuit "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level

---

[2](...continued)
the logical bridge between statute and regulation." 408 F.2d at 167. Judge Posner, first used the phrase in a Social Security context in *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996) and would be the first to acknowledge that it was not meant as a self-defining test or formula. *Cf., United States v. Edwards*, 581 F.3d 604, 608 (7th Cir. 2009)("We recall Holmes's admonition to think things not words...."); *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 990 (7th Cir. 2004).

More recently, the Seventh Circuit, in a Social Security case explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

of articulation of the ALJ's assessment of the evidence . . . in cases in which considerable evidence is presented to counter the agency's position." *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984). Later, in *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985), the court was more explicit when rejecting a plaintiff's argument that an ALJ failed to discuss his complaints of pain:

> We do not have the fetish about findings that Stephens attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).

> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do. . . . This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Id.*, at 287 (citations omitted). Or, as the court succinctly put it, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Id.* at 287-88. Given the record, and plaintiff's inability to point to evidence that shows he cannot perform the simple work the ALJ found he could perform. Given the record in this case, the ALJ has done enough here.

## III.

The plaintiff advances one argument for remanding the ALJ's decision in this case. The

12

plaintiff contends that the ALJ's RFC determination is unsupported because she failed to properly evaluate the opinion of consultative examiner, Dr. Jain. Any other arguments plaintiff might have raised are deemed waived. *Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663, at *2 (7th Cir. Feb. 8, 2022); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

Because plaintiff filed her claim after March 27, 2017, the Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, revised 82 Fed. Reg. 15132; see also 81 Fed. Reg. 62,560 (discussing proposed changes), apply. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). ALJs no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); see also 81 Fed. Reg. 62,560, 62,574 (discussing the proposed rule changes) ("In addition to proposing to use the term 'persuasive' instead of 'weight' for medical opinions in 20 CFR 404.1520c and 416.920c, we also propose to use the term 'consider' instead of 'weigh' in 20 CFR 404.1520b and 416.920b."). But, as before, "supportability" and "consistency" remain hallmarks of assessing medical opinions:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although ALJs must consider a number of additional factors, they need only explain how they considered supportability and consistency. 20 C.F.R. §

404.1520c(b)(2), 416.920c(b)(2). Now, as before, an ALJ is understandably entitled to give less weight to an opinion that is internally inconsistent, or inconsistent with objective medical evidence in the record. *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020), That's what the ALJ did here. The underlying standards are not unique to disability cases. On the contrary. They are basic principles of common sense.

In this case, the ALJ adequately explained her reasoning, and minimal articulation of the ALJ's reasons is sufficient. *See Deloney v. Saul*, 840 F.Appx. 1, 4 (7th Cir. 2020)("We will defer to an ALJ's decision to give a treating physician's opinion less than controlling weight if the ALJ considers the factors listed under § 404.1527(c) and minimally articulates his reasoning."); *Winsted*, 923 F.3d at 478; *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008). The ALJ found Dr. Jain's opinion unpersuasive, because it was inconsistent with the clinical findings, including x-rays, which showed only unspecified degenerative changes. Additionally, the ALJ noted there was no evidence of disc herniation, lumbar spinal stenosis, or nerve root compression. (R. 28). Accordingly, it does appear that Dr. Jain's rather severe restrictions – sitting for no more than 25-30 minutes, standing for no more than 20 minutes, walking up to 2 blocks, and lifting/carrying no more than 8 pounds – are out of sync with the clinical findings. Again, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his . . . medical opinion(s) . . . the more persuasive the medical opinions." So, clearly – and contrary to plaintiff's assessment of the ALJ's opinion – the ALJ properly considered "supportability" and explained why Dr. Jain's opinion was not persuasive.

Plaintiff submits, however, that Dr. Jain's opinion is supported by the doctor's range of motion findings. Perhaps, but, again, the standard here is "substantial evidence." While examination

14

of the spine revealed limited range of motion, flexion was still 70 degrees out of 90, not terribly limited. Extension and lateral extension were more significantly limited and straight leg raising was positive, but none of these findings necessarily rule out plaintiff's *sedentary* inspector job. The court cannot and will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022)(quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)); *Prill*, 23 F.4th at 746.

Moreover, the plaintiff ignores the fact that the ALJ also found Dr. Jain's opinion inconsistent with the medical record. As described in the foregoing summary of the medical record, often, plaintiff had few complaints about her back. Range of motion and gait, as well as neurological finds were, in the main, normal. The ALJ enumerated these mostly unremarkable findings in her discussion of the medical record (R. 22-23). Plaintiff either had no complaints or exhibited no issues upon musculoskeletal examination on June 24, 2018 (R. 405), October 24, 2019 (R. 561, 567), October 30, 2019 (R. 845), December 17, 2019 (R. 939-40), January 2020 (R. 1206-07), May 19, 2020 (R. 1251, 1281), June 24, 2020 (R. 1759-60), November 18, 2020 (R. 1423), and December 17, 2020. (R. 1479). These types of findings do not suggest plaintiff is so severely limited in terms of sitting, standing, or walking, as Dr. Jain opined.

Plaintiff ignores these findings in her brief; indeed, she is unable to direct the court to any exam notes from her attending physicians to support Dr. Jain's opinion. [Dkt. #14, at Page 4-7/11]. It is the plaintiff's burden to prove she is disabled by providing medical evidence in support of her claims. *See Karr*, 989 F.3d at 513; *Sosh v. Saul*, 818 F. App'x 542, 546 (7th Cir. 2020); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) and therefore "the claimant bears the risk of

15

uncertainty."). *Accord Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c)("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled.").  As the Supreme Court stated in *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."  *See also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 (7th Cir. 1992) (holding that "compelling the court to take up a burdensome and fruitless scavenger hunt ... is a drain on its time and resources").

And, again, the ALJ's decision need only be supported by substantial evidence, and the "threshold for such evidentiary sufficiency is not high." *Biestek*, – U.S. at –, 139 S. Ct. at 1154. The ALJ need not point to even a preponderance of the evidence in order to meet it. *Cohen v. Astrue*, 258 F. App'x 20, 26 (7th Cir. 2007); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).  Surely, given the record of mostly normal physical findings, the ALJ's reasoning is sufficient in this case.[3]

In the end, the problem for plaintiff seems to be that she feels the court must uncritically accept that the opinion from Dr. Jain, after a single examination, outweighs the rest of the physical

___

[3] While plaintiff does not address limitations due to her mental impairments, much the same can be said for the medical record in that respect.  Time and time again, plaintiff had either no complaints, normal mental status exams, or both: March 7, 2018 (R. 400),  June 24, 2018 (R. 405), August 6, 2018 (R. 408), September 5, 2018 (R. 412) November 2019 (R. 416-17), May 7, 2019 (R.610), May 7, 2019 (R. 712),  July 9, 2019 (R. 730), August 6, 2019 (R. 747), September 3, 2019 (R. 766-67), and September 24, 2019 (R. 807), October 24, 2019 (R. 561), October 29, 2019 (R. 826-27), October 30, 2019 (R. 845), December 17, 2019 (R. 940), January 2020 (R. 1206-07), May 19, 2020 (R. 1251, 1281), May 28, 2020 (R. 1579), June 2020 (R. 1594), July 6, 2020 (R. 1609), August 6, 2020 (R. 1629-30), September 3, 2020 (R. 1645), October 1, 2020 (R. 1664), November 5, 2020 (R. 1681),  December 12, 2020.  (R. 1736), December 17, 2020.  (R. 1479).

findings in the record. She argues that "if the opinion of Dr. Jain's was properly considered Plaintiff would not even be able to engage in sedentary work. Therefore, Plaintiff would be found disabled." [Dkt. #14, Page11/11]. But, as just explained, the ALJ *did* properly consider the opinion and, given the record, just as properly rejected it. The Seventh Circuit reminds reviewing courts on a fairly regular basis that, if reasonable minds could differ as to the weight of the evidence, an ALJ's weighing of that evidence must be affirmed. *Karr*, 989 F.3d at 513; *Zoch*, 981 F.3d at 602. It is doubtful that reasonable minds would accept plaintiff's position that Dr. Jain's opinion outweighs months of unremarkable findings. Consequently, the ALJ's opinion is affirmed.

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying plaintiff's application for benefits is affirmed.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/26/22

17